are on the call. Ms. Shen, can you hear me? Yes, Mr. Huron. And Mr. Farley, can you hear me? Yes, sir. Thank you, counsel. Judges, counsel are prepared to argue. Very well, counsel. The case has been called. We're ready to hear you. Good morning, Your Honors. This is Kathleen Shen, and I'm here on behalf of Mr. Lozado. Everybody now agrees that Mr. Lozado isn't actually subject to an ACCA sentence, and that the 235-month sentence he is currently serving is almost 10 years longer than the statutory maximum. The only question that's still remaining is whether he can satisfy the procedural requirement of showing that Johnson error occurred at his original sentencing, and even under the government's framework for analyzing that question, he can. So this ultimately depends on whether the district court relied on the residual clause to find that Mr. Lozado's second-degree burglary conviction was a violent felony at the original sentencing, and the answer to that question is yes. So because the sentencing record is silent about which clause he relied on, we look to the background legal environment, and when Mr. Lozado was sentenced in 2014, the background legal environment would have required the district court to rely on the residual clause. The plain language of the statute defining Colorado second-degree burglary of a building is broader than generic burglary because the definition of building includes, for example, ships and vehicles adapted for the overnight accommodation of animals, and the government doesn't dispute this. They admit that the statutory language is overbroad and doesn't satisfy generic burglary. What the government is wrong to say is that the sentencing court could have looked beyond the language of the statute to the facts of the burglary itself. So the government argues that the district court could have looked at PSR language to consider the facts of the underlying burglary, and so that PSR language says records received from Denver County District Court reveal that the defendant broke into the victim's residence. The sentencing court could not have evaluated whether that information came from Shepard documents, and Perez Vargas, which would have been controlling at the time of sentencing, is exactly on point on this question. In that case, the district court found that a prior conviction was a crime of violence based on information in the PSR that came from court documents, and on appeal, this court reversed because the court documents relied on by the PSR were not in the record, and so the district court could not have evaluated those records to determine whether they were acceptable Shepard documents. And the same is true here. The Denver County District Court records that are mentioned in the PSR, they weren't part of the sentencing record, and there would have been no way for the sentencing court to determine that they were valid Shepard documents, so it couldn't have used them to an ACCA offense. And I think it's also important to note here that the complaint the government is now seeking to rely on isn't actually a Shepard document either. That complaint charges Mr. Lozado with the crime of second-degree burglary of a dwelling, and that's a different crime than second- degree burglary of a building, and so that's not a Shepard document because Mr. Lozado didn't admit those facts when he pleaded guilty. And so since no Shepard documents were part of the sentencing record, the sentencing court would have had to look- been limited to the plain language of the statute and could only have applied the residual clause to conclude that that statute qualified as an ACCA predicate. So even if we look at this question under the government's proposed framework, Joston error occurred because without the And since Joston error occurred, you know, we proceed or we proceed to the question of whether that error was harmless, and as the government now agrees the error is not harmless because Mr. Lozado doesn't have three ACCA predicates. And so we therefore ask you to reverse the district court order and remand for resentencing without application of the ACCA. Thank you counsel. Did you have something further because you have plenty of time. If not, then the remaining time is- excuse me, go ahead Judge McHugh. I don't have any questions. All right, sorry. All right, then the rest of the time is reserved for rebuttal. We'll hear from the government. Good morning. May it please the court, Paul Farley for the government. I want to talk a little bit about the framework just to make sure that there is actual agreement on that, and then I'll move to the application of that framework to this case. The court's decision last year in Neely holds that to determine whether Joston error occurred, we begin with all of defendants prior offenses deemed by the sentencing court to be qualifying predicates. Then the defendant has the burden of showing that under the law at the time, fewer than three would have qualified under the elements clause or the enumerated offenses clause. This is sensible and entirely consistent with this court's published decisions. Last year's published decision in Copeland says succinctly that the movement has to prove that it was the use of the residual clause that led to the sentencing court's enhancement of his sentence. Essentially, it's a but-for test. So here the PSR found that all five predicates qualified. There were no objections to the PSR and the court adopted it as its factual findings. So, but in fact all five do not, Judge Nisero, but in fact all five predicates do not apply, correct? If we look at them just objectively? That's correct. At the time, your honor, they did apply. All right. They all qualified. Temporarily, then we look at the time of sentencing and not what was the law at the time and what qualified at the time. And if you find fewer than three at the time, then we move to current law and determine the status. And we have, as Ms. Shen stated, we have conceded that under current law there are not three qualifying predicates. However, we don't get to that first phase. So in this case, the party... What are the three? This is Judge McHugh. Looking at the law at the time of sentencing, what are the three predicate crimes that you rely on here? There's felony, there's... I'm sorry. Go ahead. There's felony, there's robbery, and second-degree burglary. There's agreement that the felony, menacing, and the robbery are qualified at the time. So right now, it all boils down. I think there's agreement on both sides here. This all boils down to where the Colorado second-degree burglary at the time of the sentencing in 2014 qualified. And again, I think we have agreement that the language of that statute, both then and now, is broader than generic burglary. But at that time, in a pre-Mathis era, we would have parsed the text and used Shepard documents to figure out whether, in fact, he was convicted of a qualifying generic burglary. And Shepard documents, I mean, what you could have relied on at the time of sentencing under our precedent would have been the statute itself, which doesn't help you, right? Right. The charging document or comparable reliability and any admissions. What do you point to that's a Shepard document that was available to the sentencing court at the time of sentencing? Well, what I'm going to point at is that PSR. And let me walk through that because I think there's been some variation or apparent inconsistency in the treatment of PSRs in this setting. Neely, which we published a decision from last year. But it seems to pretty much say that an unobjected to PSR can be reliable all by itself. In this court's published opinion in Washington in 2018, the court noted that it had upheld a district court's reliance on a PSR in enhancing a sentence where the PSR was based in part on court records and the defendant did not object. Based in part on court records and the defendant did not object. And that was referring to an earlier decision in Harris, which was decided the year after Perez Vargas. Harris has also published the opinion. Last year's Copeland decision, published opinion, said that Harris wasn't directly on point but that even under Washington's take on Harris, a court would have needed more than a defendant's failure to object. Okay. There must be some proof that PSR relied on court records before its description could serve as the basis for an enumerated clause offense finding. That's at 921 F 3rd 1249. So under the relevant background ground law at the time, a court could rely on the enumerated offenses clause, and this is not this is at 1250, only if Shepard documents or a PSR referring to them showed that the prior offense was generic burglary. That is, and the court continued, the PSR at least needed to state it relied on Shepard documents for its description of the offense. This is the same rule applied by the Ninth Circuit in the Gonzales upper ECO case we filed as a 28 J. Ninth Circuit there, again, disavowed reliance on an unobjected to PSR standing alone, but noted there the PSR prepared in this proceeding did more than provide a mere factual narrative. It instead evidently quoted from state court documentation. So where does that leave us? Here the PSR said that records received from the Denver County District Court revealed that the defendant broke into the victim's residence, although he pled guilty to breaking into a building. The defense concedes that this satisfies the definition of generic burglary that says the court wasn't allowed to consider. It's clear that the state court documents referenced in the PSR here showed two things, that the defendant was originally charged with the more serious crime of burglary of a dwelling, and that he subsequently pled down from that to a building. The court documents then likely were either the complaint and judgment together or the defendant was convicted. This is true. But it doesn't identify with any specificity, this is judgment to you again, what state court records it's relying on, does it? It doesn't tell us. And doesn't Copeland require that we, I mean, it's not just some reference to the state court docket, but we need to know specifically if we're, if it's a document we would recognize as being sufficient under Shepard. Well, Copeland says there must be some proof that PSR relied on court records. All right, I think we have, you know, some proof that the PSR relied in court records. The PSR says it much and nobody objected to that. My point is that that passage in the PSR, it doesn't tell us what court records and it doesn't tell us what specific clause the defendant was charged with. Are the records that you rely on in the record for our review? I'm sorry, I sound like there was more to the question and I didn't catch it. No, no, I just want to know if the records, the Shepard documents are in the record for our review. There are, the documents which were provided at the 2255 proceeding, I believe Ms. Shen correctly points out that those were not available at the time for the court's considerations, so we shouldn't consider those. What I'm suggesting here is that it appears that this court's referencing court documents is itself a variety of a Shepard document, that it is permissible to look at that to determine the charge at the time. Well, let me let me interrupt again, this is Judge McHugh. In the PSR, when they're talking about that particular sentence that you quote, records received from Denver County District Court revealed that the defendant broke into the victim's residence, although he pled guilty to breaking into a building. What they're talking about there is the original charge of class 3 burglary, right? I believe so. Okay, and he ended up pleading to a lesser offense of class 4, a lesser offense, correct? Yes. Okay, so we don't know when he ultimately was convicted of the lesser charge. I'm not sure that the elements of the greater charge are all that helpful, because he never admitted to those. I understand. Let me kind of roll through where I think we can get there. Like I said, the PSR doesn't tell us what clause he was convicted under, but it does tell us what he wasn't convicted under. It wasn't a breaking into a ship, trailer, sleeping car, airplane, or other vehicle. And it wasn't a structure designed to shelter animals or property. It was a residence for human beings. And that's what the sentencing court saw. The court explained that he wasn't convicted of burglary alone. He was convicted of burglary of the building, apparently as part of a plea bargain. That's volume 3, page 53. And more to the point, quote, the records indicate that he actually broke into a woman's home who found him there. That's volume 3 at 30. So even if the PSR here doesn't quite satisfy the law at the time, we think it does, but even if it doesn't, under Shepard, I think these statements by the sentencing court amount to an explicit factual finding to which the defendant assented. Again, PSR was not objected to. The court made a decision. At sentencing, the defendant admitted his conduct. That's volume 3, page 41. And given that the defendant has the burden of proof at this stage of the proceeding and has brought forth nothing to the contrary, we believe that's enough to sustain the sentencing court's finding under the Numerator Defenses Clause. And one final point here. Under Neely and this court's published decision in Murphy from 2018, we're looking for the analytical path of least resistance. When considering a burglary offense, the most obvious thing in the world would be to consider it under the Enumerated Offenses Clause rather than reaching out to the Residual Clause. Again, our record is devoid of any indication that the government, the defense, the court, probation, anybody thought the burglary offense here was a residual clause offense. It was a enumerated clause offense. And so there's no reason not to accept the statements in the PSR here at face value. Well, we didn't in Paris Vargas. This is Judge McHugh again. There, we also had reliance on, quote, court documents from the state. And we said that that wasn't enough because they have to be court records of comparable reliability to charging documents. And we said without more information about what these court documents are, we can't tell and we're not going to rely on it. But in, but in the Harris decision, which again was the year, may I finish my answer? Judge Lucero? Counsel, you have three minutes remaining. Okay, I'm sorry. I thought that was only one. Judge Lucero, one second, Mr. Farley, just some housekeeping here. Mr. Heron, Mr. Farley has three minutes remaining. Correct, Judge. Thank you. Mr. Farley, you may proceed. Thank you. I mistook the one bell for two bells. I did as well. Sorry about that. To answer the question, I appreciate what Perez Vargas said. I also know that Harris, the very next year, the court published opinion where it indicated that if there's proof that the PSR relied on court records, that could serve as a basis. So it, that appears to me, you want to call it an expansion or a stepping out from the classic Shepard kind of formulation. But I think, and even Copeland, Copeland did not disavow Harris, said you have to have something that indicates there were court records. We clearly have an indication that it's court records. It was set, it was stated as much by probation. How, other than having Shepard documents in front of it, probation could have determined what the original charge was and what the final charge was, the admitted charge, is not clear to me. And picking up on the Ninth Circuit's opinion in Gonzales, it bears repeating that if the defense had raised some sort of objection, the government could then have presented in the proceeding the actual documentation. Again, a lot of this folds back on itself. It's clear that probation had these documents, there was no objection, and so they were not, they were not brought before the sentencing court and vetted at that point. And I think that's why... Judge McHugh, again, with all due respect to the Ninth Circuit, the Tenth Circuit and Copeland says we need more than a failure to object. Oh, and I'm going to tell you, it's not just a failure to object, it's also a reference to court records. Again, Copeland at 1250, only if Shepard documents or a PSR referring to them showed that the prior defense was generic burglary. So we don't have to have... But the PSR doesn't refer to Shepard documents, it refers to, court records. Not all court records are Shepard documents. I certainly agree with that. Again, as I've indicated, it seems clear that the documents that they were referring to would have been Shepard documents because they had both the original charge and the final judgment. So I think it's the complaint and the judgment or a plea agreement or it's all of that. This is what we have in the record. I'm not going to obviously try and suggest to the court there's something before you that isn't, but I believe under Copeland and Harris that a PSR... You may finish your point, please. Yeah, a PSR referring to what apparently are Shepard documents is sufficient. We would ask that the Thank you, Mr. Corley. Ms. Chen, I believe you have some time remaining. Yes, thank you, Your Honor. At the time of sentencing, the district court could only have relied on Shepard documents. We could have relied on Shepard documents to find that the burglary was a generic burglary, but there weren't any Shepard documents in the sentencing record. There was just the PSR reference to the Denver district, which weren't part of the sentencing record, and so the district court couldn't determine that they were Shepard documents. Again, Perez-Vargas is exactly... And Ms. Chen, Judge Lucero, are those documents now before us or are we still left with the record as it is with the court's statement? It's... I don't know for sure what documents that the probation officer was complaint from this underlying charge or this underlying criminal case that was added to the record at the 2255 stage, so it's part of the record in this appeal, but it's not relevant to the question of what the sentencing court did at the time of sentencing. Thank you. And just to return to the point, Perez-Vargas is exactly this case and would have made clear that the sentencing court was prohibited from considering the information in the PSR without having the Shepard documents before it or having any way of verifying whether the court records were in fact Shepard documents, and the government has referred to cases like Harris and Copeland, which came after Perez-Vargas, and, you know, Harris... I apologize for saying, you know, Harris didn't know who Perez-Vargas was, and just to go to Copeland, the government really harps on this one sentence in Copeland where they talk, they refer to court records in the PSR, but if you read Copeland as a whole, it's clear that Copeland is interpreting Perez-Vargas, which says that you can, that the PSR, that the district court would have had to been able to verify that the documents referenced in the PSR were in fact Shepard documents. So where Copeland refers to court records, what it means is Shepard documents, and the government suggests that we can assume that the Denver District Court records referenced in the PSR were Shepard documents, but that's not the case. That's contrary to Perez-Vargas, and we actually have reason to believe that that assumption doesn't apply here, because the facts that are in the complaint that the government is now touting that became part of the record in the 2255 stage of the proceedings, that complaint actually is not a Shepard document, and because it charges Mr. Lozado with a different offense than the offense he pleaded the facts in the complaint when he pleaded guilty, and so if the probation officer relied on that complaint to draft the PSR, that would in fact be an example of a PSR that's not based on Shepard documents. And finally, you know, given all of the complexities of the law about when the sentencing court could have considered Shepard documents and under what circumstances, and particularly given the fact that Perez-Vargas would have precluded the sentencing court from using or applying the enumerated offenses clause in this case, the passive analytical least resistance is a residual clause. The government is essentially asking this court to assume that the sentencing court either disregarded Perez-Vargas or, you know, just violated Perez-Vargas and applied the enumerated offenses clause based on this non-Shepard document information in the sentencing court record, but that's much less likely than that the district court simply applied the residual clause. And so in sum, given the law at the time of sentencing, it's more likely than not that the district court sentenced Mr. Lozado to an armed career criminal act sentence based on its conclusion that his conviction for second-degree burglary qualified as a felony under the residual clause. And therefore, Johnson error occurred when Mr. Lozado was sentenced. We now know that that Johnson error was not harmless because Mr. Lozado is not in fact an armed career criminal, and so we therefore ask you to reverse the district court and send this back for resentencing without application of the Armed Career Criminal Act. Thank you. Thank you, counsel. Cases submitted. Counselor excused. Mr. Horan, I understand we have no further cases on the docket for argument this morning? That's correct, Judge. The clerk will announce the recess, please. Thank you, judges. Thank you, counsel. The court is now in recess, subject to call. I am adjourned. Thank you.